Otis S. Oliver, Appellant *v.* Zoning Hearing Board of South Londonderry Township, Lebanon County, Pennsylvania, Appellee.

Argued September 11, 1978, before Judges WILKINSON, JR., ROGERS and CRAIG, sitting as a panel of three.

*Kenneth C. Sandoe,* with him *L. E. Meyer,* and *Christianson & Meyer,* for appellant.

*Thomas A. Ehrgood,* with him *Ehrgood & Ehrgood,* for appellee.

OPINION BY JUDGE CRAIG, October 20, 1978:

This zoning appeal presents a narrow ordinance interpretation issue of whether a so-called "animal shelter" on a farm should be classified as a principal building subject to a fifty-foot setback requirement, which has admittedly been violated, or should be considered an accessory building for which no setback is required.

Appellant Otis S. Oliver, the landowner, owns approximately thirty acres of land in South Londonderry Township, Lebanon County, in a district zoned A-Agricultural. Appellant's brief refers to the land as a "farm." In addition to the farm residence, the land contains a barn, part of which has been converted into a recreation room and bar used in connection with the residence; the record does not reveal what use is made of the remainder of that original barn. Also on the land is a mobilhome park, in which a number of spaces are apparently rented on a commercial basis.

The landowner agreed that he uses some of his land "for farming and some of it for pasturing," but he also stated that he was "not really in the cattle business."

Nevertheless, he does have two cows, described as pregnant, and four steers. To house them he applied to the zoning office of the township for a permit to erect a "small animal shelter." Upon being advised of the fifty-foot setback requirement,[1] he obtained a per-

---

[1] The ordinance requires a fifty-foot front yard and a fifty-foot rear yard; it does not use the term "setback" as the parties have done. Although a side yard of just twenty feet is allowable, appellant

mit to place the building in a location 100 feet from the road.

However, before construction, he discovered that the proposed location was low and wet, and therefore he had his builder erect the shelter in a high and dry location just twenty-one feet from the road's edge and thirty-one feet from its centerline.

When the township then ordered the building removed as a violation, the landowner appealed to the township's zoning hearing board, which denied his request for a variance.

Upon his appeal to the Court of Common Pleas of Lebanon County, the landowner initially pursued both the variance request and an attack on the validity of the fifty-foot setback requirement. After President Judge GATES rejected those positions in an able opinion, the landowner raised, on petition for reargument, the only question which he has preserved here: his position that the shelter is not a principal non-residential building but is only an accessory building, for which the zoning ordinance apparently prescribes no setback.

The court below held that the building in question is a principal building, not an accessory one, and accordingly dismissed the appeal. From that final order, the landowner entered this appeal.

Clearly, we could affirm the decision of the court below solely on the basis that the landowner's building is admittedly in violation of the only building permit he ever obtained. However, because such a decision would probably lead only to a fresh building permit application based upon the accessory building theory, we proceed to consider that theory.

_____

has placed no reliance upon that lesser requirement; the case has proceeded on the basis that the minimum applicable setback is fifty feet if the building is a principal one.

The South Londonderry Township Zoning Ordinance defines "Accessory Building" as:

A building detached from and subordinate to the main building on the same lot and used for purposes customarily incidental to the main building.

A "Principal Building" is defined as:

A nonaccessory building on which the principal use of the lot is conducted.

Summarizing the landowner's testimony and argument, he has erected a structure to house four steers and two cows, not for the "cattle business" but so that the grazing cattle may keep down brush growth on the land, as a matter "subordinate" and "customarily incidental" to the principal use.[2]

We note that the shelter building, although only twenty feet by twenty feet in size, is permanent and was described by its builder as "very substantial." It has an adjacent corral to fence the cattle when they are treated by a veterinarian, as well as a feeding entry and a loading chute.

Because Section 6.2H of the ordinance authorizes accessory uses and buildings as incidental to "permitted uses," the concepts of "permitted use" and "principal use" apparently overlap each other. Among the pertinent permitted uses listed in Section 6.2 for the Agricultural District are:

A. Single-family dwellings.
B. Crop and truck farming, pasturing, truck, gardening, horticulture, greenhouses, nur-

---

[2] Rural households not uncommonly have sheep for the sole purpose of keeping down grass growth. Also, the use of goats to keep down brush is sometimes observed. However, we cannot adopt an unproved assumption that it is customary to keep cattle, including pregnant cows, for the exclusive purpose of keeping down either kind of growth.

series, aviaries, hatcheries, and similar enterprises.

C. Raising and keeping of poultry, rabbits, goats and similar animals.

D. General and specialized farms, including the raising, keeping and breeding of livestock for gain, including cattle, hogs, horses, ponies, cows, sheep and similar livestock.

If we apply these ordinance terms, we note that the landowner denies "keeping and breeding of livestock for gain," but his admitted uses, "farming" and "pasturing" are both listed as permitted principal uses.

Finally, because the ordinance defines an accessory building as one "detached from and subordinate to the main building" and used for purposes "customarily incidental to the main building," such ordinance terms would classify the animal shelter as accessory if it is detached from, subordinate and incident to a "main building" related to the farming (or pasturing) principal use.[3]

If the original barn were the main farming building and the shelter were merely an outbuilding ancillary to it, the shelter would meet the definition of accessory building, but the landowner has presented a record which tells us only that the cow stable of the barn has been converted to the non-agricultural pursuits of a recreation room and bar, with no evidence

---

[3] We note that the landowner has not claimed that the shelter is accessory to the residence, as was the case in *Charleston Township v. Fuguet*, 27 Pa. Commonwealth Ct. 302, 366 A.2d 1386 (1976), in which we held the keeping of one horse and one pony in a garage to be an accessory use to a residence on 2.2 acres of land in an area zoned Farmed Residential. The present case is not analogous because a farm house is normally not considered to be a main use separate from the farm itself, and six cattle in a barnlike structure are plainly different in nature, as well as degree, from a horse and pony in a garage.

whatsoever of any farming use of the remainder of the barn.

Thus, with no evidence that the original barn is the central structural focus of the farming and pasturing use, we must conclude that the shelter itself constitutes a principal building for that use and affirm President Judge GATE's conclusion to the same effect.

ORDER

AND Now, this 20th day of October, 1978, the judgment of the court below is affirmed.